T.C. Memo. 1995-548

UNITED STATES TAX COURT

MICHAEL J. FITZPATRICK, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9269-94.                    Filed November 20, 1995.

Michael J. Fitzpatrick, pro se.

<u>Thomas F. Eagan</u> and <u>Daniel K. O'Brien</u>, for respondent.

MEMORANDUM OPINION

TANNENWALD, <u>Judge</u>:  Respondent determined deficiencies in

and additions to petitioner's Federal income taxes as follows:

|  |  | Additions to Tax | | |
|  |  | Sec. | Sec. | Sec. |
| Year | Deficiency | 6653(b) | 6653(b)(1) | 6653(b)(2) |
| 1981 | $30,601 | $15,301 | -- | -- |
| 1982 | 96,418 | -- | $48,209 | * |

* 50 percent of the interest due on $96,418, the
understatement of tax for the calendar year 1982
attributable to fraud.

This case is before us on respondent's motion for partial summary judgment under Rule 121,[1] petitioner's motion to dismiss on grounds of estoppel, and petitioner's motion to dismiss on grounds of double jeopardy attaching.

Petitioner resided in Taos Ski Valley, New Mexico, at the time the petition was filed.

In the 1981 and 1982 calendar years, petitioner was a loan officer at the Bank of New York. With respect to certain activities undertaken in this capacity, two indictments were filed against petitioner. The first indictment charged petitioner with violation of 18 U.S.C. sec. 1952 (1988) (hereinafter referred to as the Travel Act), and conspiracy to violate the Travel Act, 18 U.S.C. sec. 371 (1988). On May 19, 1989, the District Court for the District of Rhode Island entered a judgment of guilty on both counts, following a trial upon the merits. Said judgment was affirmed by the U.S. Court of Appeals for the First Circuit on December 27, 1989. United States v. Fitzpatrick, 892 F.2d 162 (1st Cir. 1989).

The second indictment charged petitioner with willfully attempting to evade and defeat the income tax due and owing on unreported income in the amounts of $67,253 and $206,087 for the

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

1981 and 1982 taxable years, respectively, by filing false and fraudulent U.S. individual income tax returns in violation of section 7201, and conspiracy to defraud the U.S. Government by hindering the function of the Internal Revenue Service in its efforts to collect income taxes. On May 19, 1989, the District Court for the District of Rhode Island, following a trial upon the merits, entered a judgment of guilty on the first two charges, regarding income tax evasion, and not guilty on the conspiracy charge.

Among the issues of fact determined in connection with the tax charges was whether petitioner did in fact willfully file false and fraudulent income tax returns for 1981 and 1982 with the intent to evade and defeat income tax, and whether he did in fact by such means understate a part of the income tax due and owing by him to the United States for each of the years.

Petitioner was sentenced to 3 years of imprisonment for each of the Travel Act charges, to run concurrently, and 15 months' imprisonment on the first tax evasion charge, to run consecutively to the aforesaid sentence. For the remaining tax evasion charge, petitioner received a 2-year suspended sentence and was placed on probation consecutive to the expiration of the aforesaid terms of imprisonment. Petitioner was also ordered to pay a fine of $10,000 to the United States.

On September 20, 1991, respondent issued a letter to petitioner stating that an examination of his returns for the 1981 and 1982 years showed no change was necessary in the reported tax (no-change letter).

Shortly thereafter, an agent of respondent began the process of reopening the examination of petitioner's 1981 and 1982 tax years. It was explained in the agent's request for approval of the reopening, dated December 12, 1991, that, upon notification by the U.S. Attorney's office that petitioner had requested the District Court to vacate his conviction based on the no-change letter, the chief, examination division, who had not been a party to the original decision, had reviewed the circumstances and information relating to the decision to issue the no-change letter. As a result, it was determined that, based upon the tax evasion conviction and various unresolved questions, failure to reopen would result in serious criticism of the Service's administration of the tax laws, and establish a precedent that would seriously hamper future actions.

Subsequently, on December 13, 1991, respondent issued a letter to petitioner signed by the chief, examination division, requesting that petitioner make available his books and records for a reexamination (reopening letter). On June 2, 1994, the notice of deficiency herein was issued.

Motion to Dismiss on Ground of Estoppel

Petitioner's first motion to dismiss is predicated on the argument that respondent is collaterally and equitably estopped from issuing a notice of deficiency due to the earlier issuance of the no-change letter to petitioner for the same tax years. Petitioner asks that the notice of deficiency be cancelled.

Petitioner has not directly raised any issue as to the impropriety, under section 7605(b), of a second examination after the issuance of the reopening letter. The record does not indicate whether a second examination occurred.[2] In any event, even if there was a second examination, the record provides no basis for concluding that there was any impropriety. United States v. Powell, 379 U.S. 48 (1964). Petitioner's emphasis on the absence of "new information", obtained by respondent after the issuance of the no-change letter suggests that he may be seeking support for his claim on the basis that respondent violated her reopening policy as set forth in Rev. Proc. 85-13, 1985-1 C.B. 514.[3] We are not so persuaded. We think the reasons

---

[2] If there was no second examination, no violation of sec. 7605(b) occurred. E.g., Hough v. Commissioner, 882 F.2d 1271 (7th Cir. 1989), affg. T.C. Memo. 1986-229; Digby v. Commissioner, 103 T.C. 441 (1994).

[3] Sec. 4, entitled "POLICY", states:
.01 The Internal Revenue Service will not reopen any case closed after examination by a district office or service center to make an adjustment unfavorable to the taxpayer unless:

(continued...)

for the reopening fall well within the parameters of that policy. In any event, it is clear that Rev. Proc. 85-13 is a directory, not mandatory, internal procedural set of rules which do not provide a basis for rejecting a deficiency notice because of a violation of its provisions. Collins v. Commissioner, 61 T.C. 693, 700-701 (1974).[4] Petitioner makes no argument that the deficiency notice does not otherwise meet the requirements of section 6212. See Abeles v. Commissioner, 91 T.C. 1019, 1025-1027 (1988). In view of the foregoing, the validity of the deficiency notice is not open to challenge, and we need not explore whether we would have jurisdiction to cancel the notice if the circumstances were such as to taint it. Collins v.

---

[3](...continued)
       1.  There is evidence of fraud, malfeasance, collusion, concealment or misrepresentation of a material fact; or
       2.  The prior closing involved a clearly defined substantial error based on an established Service position existing at the time of the previous examination; or
       3.  Other circumstances exist that indicate failure to reopen would be a serious administrative omission.
       .02  All reopening must be approved by the Chief, Examination Division (District Director in Streamlined District), or Chief, Compliance Division, for cases under his/her jurisdiction. If an additional inspection of the taxpayer's books of account is necessary, the notice to the taxpayer required by section 7605(b) of the Code must be signed by the Chief, Examination Division (District Director in Streamlined Districts), or Chief, Compliance Division, for cases under his/her jurisdiction. [Rev. Proc. 85-13, 1985-1 C.B. 515.]

[4]  See also Feldman v. Commissioner, T.C. Memo. 1985-132.

<u>Commissioner</u>, <u>supra</u> at 700 n.4.[5]  We shall, however, treat petitioner's motion to dismiss as a motion for summary judgment based upon claimed estoppel as a result of the no-change letter.

Petitioner argues that respondent is equitably estopped from issuing a notice of deficiency for the 1981 and 1982 tax years due to the earlier issuance of a no-change letter for those years, along with his acquittal on the charge of conspiracy to defraud the United States.  He explains that following the issuance of the no-change letter, his filing a motion for a new trial with the District Court in Rhode Island spurred the prosecutor to meet with respondent's agents with respect to the no-change letter.  He further explains that this meeting led to the issuance of the reopening letter with respect to the 1981 and 1982 tax years. Petitioner argues that this letter resulted in the denial of his request for a new trial, and nearly 1 year of additional incarceration.  He contends that there was no new information on which to base the reopening letter, only a desire to accommodate the prosecutor "and continue the illegal incarceration of the Petitioner."  He thus asserts that he may rely upon the no-change letter under the doctrine of equitable or collateral estoppel.

---

[5]  Compare <u>United States v. Powell</u>, 379 U.S. 48, 58 (1964), where the Supreme Court adopted a narrow view of circumstances that would constitute improper purpose justifying judicial refusal to enforce a summons.

We see no need to dissect the various elements of equitable estoppel[6] except to note that it is applied against respondent with the utmost caution and restraint.  <u>Norfolk S. Corp. v. Commissioner</u>, 104 T.C. 13, 60 (1995) modified on another issue 104 T.C. 417 (1981); <u>Boulez v. Commissioner</u>, 76 T.C. 209, 214-215 (1981), affd. 810 F.2d 209 (D.C. Cir. 1987).  A no-change letter simply does not provide the necessary foundation for estopping respondent herein.  <u>Opine Timber Co. v. Commissioner</u>, 64 T.C. 700 (1975), affd. without opinion 552 F.2d 368 (5th Cir. 1977); <u>Lawton v. Commissioner</u>, 16 T.C. 725 (1951); cf. <u>Estate of Freeland v. Commissioner</u>, 393 F.2d 573, 585 (9th Cir. 1968), affg. T.C. Memo. 1966-283.[7]  Moreover, petitioner's basis for claiming detrimental reliance on the no-change letter, a key condition which a taxpayer claiming estoppel of the Government must satisfy, <u>Boulez v. Commissioner</u>, 76 T.C. at 215, is totally inadequate.  The extent of petitioner's argument in respect of reliance are statements that he believed in the "authenticity" of

---

[6]  The traditional elements of equitable estoppel include: (1) Conduct constituting a representation of material fact; (2) actual or imputed knowledge of such fact by the representor; (3) ignorance of the fact by the representee; (4) actual or imputed expectation by the representor that the representee will act in reliance upon the representation; (5) actual reliance thereon; and (6) detriment on the part of the representee.  <u>Graff v. Commissioner</u>, 74 T.C. 743, 761 (1980), affd. per curiam 673 F.2d 784 (5th Cir. 1982).

[7]  See also <u>Feldman v. Commissioner</u>, T.C. Memo. 1985-132; <u>Dorl v. Commissioner</u>, T.C. Memo. 1973-145, affd. 507 F.2d 406 (2d Cir. 1974).

the no-change letter, and that he requests we "allow him to proceed with the remainder of his life unencumbered by the effects of spurious and venal allegations concerning events dating back 15 years which were reviewed for years resulting in the issuance of the 'No Change Letter'." Clearly, these assertions do not reflect any actions taken by petitioner in reliance upon the no-change letter.

Petitioner also argues that he may rely upon the no-change letter under the doctrine of collateral estoppel. Under that doctrine, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." Montana v. United States, 440 U.S. 147, 153 (1979); Brotman v. Commissioner, 105 T.C. 141 (1995). The immediate point on which petitioner's argument fails is that respondent is not a judicial body and therefore is not a "court of competent jurisdiction". In any event, our previous holding in respect of the equitable estoppel effect of the no-change letter, see supra p. 8-9, is equally applicable in respect of any claim of collateral estoppel. Indeed, to hold otherwise would have the effect of according the no-change letter the status of a closing agreement as to which there are specific statutory requirements. See Freeland v. Commissioner, T.C. Memo. 1966-283 n.10.

Nor does the doctrine of collateral estoppel operate against respondent with respect to the acquittal on the conspiracy charge. There is a higher standard of proof in criminal proceedings (beyond a reasonable doubt) than there is in this civil proceeding (preponderance of the evidence), so that failure of proof in the criminal proceeding does not necessarily lead to the conclusion that there will be a failure of proof herein. See Helvering v. Mitchell, 303 U.S. 391, 397-398 (1938); Neaderland v. Commissioner, 424 F.2d 639, 642-643 (2d Cir. 1970), affg. 52 T.C. 532 (1969); Traficant v. Commissioner, 89 T.C. 501, 510 n.9 (1987), affd. 884 F.2d 258 (6th Cir. 1989). Moreover, acquittal on the conspiracy charge does not necessarily lead to the conclusion that all the facts alleged were found in favor of petitioner. See United States v. Levy, 803 F.2d 1390, 1400 (5th Cir. 1986); Spear v. Commissioner, 91 T.C. 984, 992-995 (1988). Collateral estoppel applies only as to those issues which it can be said were necessarily determined in the prior proceeding. Montana v. United States, supra.

Petitioner's first motion to dismiss will be denied.


Motion to Dismiss for Double Jeopardy

Petitioner's second motion to dismiss is predicated on the doctrine of double jeopardy. In a similar fashion as in the first motion to dismiss, petitioner alleges he is being punished for

seeking a new trial with respect to his criminal convictions. Petitioner argues that because there was no new information to support the reopening letter, and because he "believes in his innocence of the charges contained in the Notice of Deficiency", that the Court should dismiss the notice of deficiency as being in violation of the Double Jeopardy Clause of the Fifth Amendment.

The ultimate focus of the Double Jeopardy Clause is "punishment". Ianniello v. Commissioner, 98 T.C. 165, 177 (1992) (interpreting Helvering v. Mitchell, 303 U.S. 391 (1938)). In Ianniello, we determined that a civil tax proceeding, addressing liability for the addition to tax for fraud, did not have the intention or effect of punishing the taxpayer, and was properly characterized as remedial, and we concluded that such a proceeding did not constitute a second prosecution, or multiple punishment. See Helvering v. Mitchell, supra.[8]

Petitioner's characterization of the events leading up to the issuance of the notice of deficiency does not distinguish this case from Ianniello v. Commissioner, supra. The reasons that led to the reopening letter, and the subsequent notice of deficiency, are irrelevant to the issue of double jeopardy, as the outcome remains the same. Section 6201 states that respondent

---

[8]  See also Miller v. Commissioner, T.C. Memo. 1994-249; McNichols v. Commissioner, T.C. Memo. 1992-120 and T.C. Memo. 1993-61, affd. 13 F.3d 432 (1st Cir. 1993).

is authorized and required to make the inquiries, determinations, and assessments of all taxes imposed by the Internal Revenue Code. The notice of deficiency represents nothing more than an attempt by respondent to recover revenue lost due to the taxpayer's underpayment of Federal income tax. Traficant v. Commissioner, 884 F.2d 258, 263 (6th Cir. 1989), affg. 89 T.C. 501 (1987); Ianniello v. Commissioner, supra at 179.

Petitioner's second motion to dismiss will be denied.


Respondent's Motion for Partial Summary Judgment

Lastly, we reach respondent's motion for partial summary judgment on the basis that petitioner is collaterally estopped from denying certain facts with respect to his conviction for violation of the Travel Act and conspiracy to violate the Travel Act, and that as a result of petitioner's conviction for violation of section 7201 for the 1981 and 1982 tax years, petitioner is collaterally estopped from denying that he willfully attempted to evade Federal income taxes for those years.

The disposition of a motion for summary judgment under Rule 121(b) is controlled by the following principles: (a) The moving party must show the absence of dispute as to any material fact and that a decision may be rendered as a matter of law; (b) the factual materials and the inferences to be drawn from them must

be viewed in the light most favorable to the party opposing the motion; and (c) the party opposing the motion cannot rest upon mere allegations or denials, but must set forth specific facts showing there is a genuine issue for trial.  Brotman v. Commissioner, 105 T.C. 141 (1995).  Summary judgment is available to establish the collateral estoppel defense, as respondent seeks to do herein.  Id.

Under the doctrine of collateral estoppel, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."  Montana v. United States, 440 U.S. 147, 153 (1979); Brotman v. Commissioner, supra.  Collateral estoppel may apply to matters of fact, matters of law, or to mixed matters of law and fact.  Meier v. Commissioner, 91 T.C. 273, 283 (1988).

With respect to petitioner's convictions for violation of the Travel Act, and conspiracy to violate the Travel Act, respondent argues that petitioner is collaterally estopped to deny his participation in the bribery scheme. Respondent acknowledges that because the actual receipt of a pecuniary benefit as a bribe was not an essential element of petitioner's convictions for violation of the Travel Act and conspiracy to violate the Travel Act, petitioner is not collaterally estopped to deny receipt of the amounts determined in the notice of

deficiency as income.[9]  Petitioner argues that, based on respondent's concession that a completed act of bribery was not an element of the convictions, "the convictions do not support the concept of collateral estoppel in this cause [sic] as receipt of money or goods and services is necessary to create a tax liability." However, as stated above, respondent does not argue that collateral estoppel applies to compel final judgment at this time as to the correctness of the amounts in the notice of deficiency.

Petitioner and respondent are thus in seeming agreement that petitioner is collaterally estopped to deny his participation in the bribery scheme, while it is left to determine only the amount petitioner received by his participation.  In any event, we hold that petitioner is collaterally estopped to deny such participation.[10]

Respondent further argues that petitioner is collaterally estopped, because of his conviction for violation of section 7201 for the 1981 and 1982 tax years, from denying that he willfully

---

[9]  The elements necessary for conviction under the Travel Act are: (1) Travel or use of facilities in interstate commerce; (2) with intent to promote, manage, establish, carry on or facilitate the promotion, management, establishment, or carrying on of a prohibited activity, e.g., bribery; and (3) subsequent attempt to commit or actual commission of the proscribed activity.  18 U.S.C. sec. 1952 (1988); United States v. Davis, 965 F.2d 804, 809 (10th Cir. 1992).

[10]  See also Cipparone v. Commissioner, T.C. Memo. 1985-234.

attempted to evade and defeat the income tax due and owing by him for 1981 and 1982, and as a result that he is liable for the civil fraud additions to tax under section 6653(b).

With respect to additions to tax for fraud, respondent bears the burden of proof. Rule 142; sec. 7454(a). That burden requires respondent to establish that there has been an underpayment and that some part of the underpayment was due to fraud. DiLeo v. Commissioner, 96 T.C. 858, 873 (1991), affd. 959 F.2d 16 (2d Cir. 1992).[11] Also, for the 1982 tax year, respondent must establish the specific portion of the underpayment of tax which is attributable to fraud solely for purposes of applying the "50 percent of the interest payable" provisions of section 6653(b)(2).[12] Id. at 873.

---

[11] See also McNichols v. Commissioner, T.C. Memo. 1993-61 and T.C. Memo. 1992-120, affd. 13 F.3d 432 (1st Cir. 1993).

[12] For the 1981 tax year, sec. 6653(b) provided in part:

> (b) Fraud.--If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. * * *

For the 1982 tax year, sec. 6653(b) became sec. 6653(b)(1) and (2), with sec. 6653(b)(1) retaining language identical to that of prior sec. 6653(b). New sec. 6653(b)(2) provided in part:

> (2) Additional amount for portion attributable to fraud.-- There shall be added to the tax (in addition to the amount determined under paragraph (1)) an amount equal to 50 percent of the interest payable under section 6601--

(continued...)

Petitioner argues that the results of the convictions for tax evasion are inconclusive based on his acquittal on the charge of conspiracy to defraud the United States. We are not persuaded. It is a well established principle that a verdict of guilt rendered by a jury cannot be attacked for inconsistency with an acquittal on a related charge. United States v. Powell, 469 U.S. 57 (1984); United States v. Galbraith, 20 F.3d 1054 (10th Cir. 1994). Inconsistent verdicts may stand, though they clearly infer the jury's "'assumption of a power which they had no right to exercise, but to which they were disposed through lenity.'" Dunn v. United States, 284 U.S. 390, 393 (1932) (quoting Steckler v. United States, 7 F.2d 59, 60 (2d Cir. 1925)); see United States v. Powell, supra at 65 ("It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense.").

As to the application of collateral estoppel where there is an inconsistent verdict, the Court of Appeals for the Fifth Circuit has stated that such reconciliation is best approached on a case-by-case basis. United States v. Price, 750 F.2d 363, 366

---

[12](...continued)
> (A) with respect to the portion of the underpayment described in paragraph (1) which is attributable to fraud, * * *

(5th Cir. 1985).  The defendant in Price was acquitted of two counts and inconsistently convicted on a third count concerning conspiracy to obtain gratuities.  On appeal, the conviction was reversed and remanded for a new trial on the conspiracy count. In the second trial the defendant was again convicted. On appeal, the defendant argued that under the doctrine of collateral estoppel, the trial court improperly permitted the introduction of evidence which should have been barred as a result of the acquittal on two of the charges.  The Court of Appeals affirmed the conviction, holding that, by convicting the defendant in the first trial, the jury necessarily resolved factual issues adversely to the defendant.  The court stated that the inconsistent verdicts on the other two counts were not to be read as a finding of fact favorable to the defendant on evidence which overlapped each count.  In sum, the teaching of Price is that collateral estoppel is properly applied as to those facts necessary to find for conviction, notwithstanding that those facts may have also been essential to a related charge on which the defendant was acquitted.  United States v. Chin, 795 F.2d 496, 499 (5th Cir. 1986); cf. Blanton v. Commissioner, 94 T.C. 491 (1990) (Court applies collateral estoppel to certain facts for which taxpayer was convicted under the Hobbs Act, notwithstanding the dismissal of related mail fraud charges).

Nevertheless, we find no inconsistency between the conviction for tax evasion and the acquittal for conspiracy, based on the differing requirements of proof.[13]  Cf. Los Angeles v. Heller, 475 U.S. 796, 806 (1985) (Stevens, J., dissenting) ("when faced with an apparently inconsistent verdict, a court has a duty to attempt to read the verdict in a manner that will resolve inconsistencies.").  It is perfectly logical that the jury may have found all of those facts necessary to convict petitioner for tax evasion, and which overlap the facts necessary to be found for the conspiracy charge, but did not find the facts necessary for the conspiracy charge that do not so overlap.  We thus do not hesitate in applying collateral estoppel to the tax

---

[13] Counts I and II, regarding tax evasion, of which petitioner was found guilty, charged that petitioner:

> did willfully attempt to evade and defeat a large part of the income tax due and owing by him to the United States of America * * *, by preparing and causing to be prepared, and by signing and causing to be signed a false and fraudulent U.S. Individual Income Tax Return, Form 1040, which was filed with the Internal Revenue Service * * *.

In comparison, count III, regarding conspiracy, of which petitioner was acquitted, charged that petitioner:

> and others known and unknown, did unlawfully, willfully, and knowingly conspire, combine, confederate, and agree together and with each other to defraud the United States by impeding, impairing, obstructing, and defeating the lawful Government functions of the Internal Revenue Service of the Treasury Department in the ascertainment, computation, assessment, and collection of the revenue: to wit, income taxes.

evasion convictions. Cf. <u>United States v. Powell</u>, 469 U.S. 57 (1984).

Petitioner also argues that only the conspiracy charge required the finding of certain overt acts, which petitioner seemingly argues are the receipt of the funds alleged in the notice of deficiency, thus implying that there has been no finding of the receipt of unreported funds.

This is incorrect. A conviction under section 7201 carries with it the ultimate factual determination that an underpayment exists, as well as that some part of the underpayment is due to fraud. <u>Arctic Ice Cream Co. v. Commissioner</u>, 43 T.C. 68, 74 (1964); <u>Amos v. Commissioner</u>, 43 T.C. 50, 54-55 (1964), affd. 360 F.2d 358 (4th Cir. 1965).[14]

Petitioner further argues that collateral estoppel is inapplicable because of new evidence. The purported new evidence he refers to consists of copies of two promissory notes, in the amounts of $100,000 and $43,000, which he alleges show the existence of loans to petitioner which would impliedly explain certain funds received by him in 1981 and 1982, which respondent asserts in the notice of deficiency constitute unreported income. At petitioner's sentencing hearing in the District Court proceeding, he asserted that the notes had been destroyed.

---

[14] See also <u>Cipparone v. Commissioner</u>, T.C. Memo. 1985-234.

As to their recovery, petitioner has supplied an explanatory affidavit. The affidavit is that of an acquaintance of petitioner who attests that he noticed boxes being thrown out by a new owner of petitioner's home in 1991, petitioner having sold the home in the mid-1980's. The acquaintance further attests that he saw many of the papers in the boxes were addressed to petitioner, and, knowing of petitioner's incarceration, took the boxes and placed them in a storage shed. It was further attested that petitioner visited this acquaintance in the fall of 1993 when he was given the boxes containing the promissory notes.

Newly discovered evidence does not affect the application of collateral estoppel where it could have been produced in the prior proceeding by the exercise of due diligence. Calcutt v. Commissioner, 91 T.C. 14, 25 (1988).

Respondent argues that the documents could have been produced by petitioner at the prior trial by the exercise of due diligence. We agree. Given that the documents were recovered from the home once owned by petitioner, we cannot understand how due diligence would have failed to unearth the promissory notes at the time of the criminal trial. The notes thus do not preclude the application of collateral estoppel. See Id. at 25.

In sum, we apply the well established doctrine that a conviction under section 7201 collaterally estops the taxpayer from denying fraud for purposes of section 6653(b) for the same

tax years. <u>Moore v. United States</u>, 360 F.2d 353 (4th Cir. 1965); <u>DiLeo v. Commissioner</u>, 96 T.C. 858, 885-886 (1991), affd. 959 F.2d 16 (2d Cir. 1992).

We note that petitioner states he will attempt to use this forum to prove his innocence regarding his violation of the tax code, having been unable to appeal his conviction on Counts I and II. Given this statement, and the form of petitioner's arguments so far, we now wish to make clear that, based on our holdings as to the application of collateral estoppel, there remains for decision only a few items which were not decided in the District Court proceeding, which are as follows: (1) The amount of unreported income received by petitioner in 1981 and 1982 (as to which petitioner bears the burden of proof, <u>Meier v. Commissioner</u>, 91 T.C. 273, 288 (1988)); and (2) the amount of the understatement of tax in 1982 attributable to fraud, for purposes of section 6653(b)(2), as to which respondent bears the burden of proof by clear and convincing evidence, <u>DiLeo v. Commissioner</u>, 96 T.C. at 873. As for those items decided in the District Court proceeding with respect to the tax evasion charges, petitioner missed his chance for reargument by his failure to appeal, notwithstanding his claims as to "the necessity to allege ineffective assistance of counsel involving an attorney who showed no malice", and the costliness of appeal.

Furthermore, we decline petitioner's invitation to "determine the hierarchy of doctrines commonly relied upon in our legal system", including whether the doctrine of collateral estoppel is superior to the civil doctrine, nobiliores et benigniores praesumptiones in dubiis sunt praeferendae,[15] and whether "the doctrine of collateral estoppel [is] superior to the doctrine of lenity as to the interpretation of the findings of a jury charged with clear and specific instructions by the trial court judge?"

In accordance with the foregoing,

<u>An appropriate order will be issued</u>.

---

[15] Black's Law Dictionary 1047 (6th ed. 1990) defines this as follows:

> In cases of doubt, the more generous and more benign presumptions are to be preferred.  A civil-law maxim.